UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAMAR HILLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 6012 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| COSTCO WHOLESALE CORPORATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Lamar Hillman brought this suit against his employer, Costco Wholesale Corporation, alleging disparate treatment, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*. Doc. 41. (The operative complaint also names Sedgwick Claims Management Services, Inc., as a defendant, but the record does not indicate that summons was issued, let alone served, so Sedgwick will be ignored.) Trial has been set for March 9, 2015. Doc. 71. Costco has moved for summary judgment. Doc. 51. The motion is granted as to the disparate treatment and retaliation claims and denied as to the failure to accommodate claim.

### Background

The following facts are stated as favorably to Hillman, the non-movant, as permitted by the record and Local Rule 56.1. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). On summary judgment, the court must assume the truth of those facts, but does not vouch for them. *See Smith v. Bray*, 681 F.3d 888, 892 (7th Cir. 2012).

Costco operates cash-and-carry member warehouses throughout the country and in the Chicago area. Doc. 61 at p. 1, ¶ 1. Costco employed Hillman as a seasonal employee at its

Lincoln Park warehouse, located at 2746 North Clybourn Avenue in Chicago, from November 2007 through January 2008 and from October 2009 through December 2009. *Id*. at pp. 1-2, ¶¶ 1-2. On January 26, 2010, Costco re-hired Hillman as a part-time "service assistant." *Id*. at p. 2, ¶ 2. At all relevant times, the Lincoln Park warehouse was managed by Warehouse General Manager Brian Thomas, and three Assistant General Managers, Carl Benjamin, Jenny DiGuardi, and Theresa Williams. *Id*. at p. 4, ¶ 11. Vickie Burghgraef and Amber Hale were the payroll clerks at the Lincoln Park warehouse. *Id*. at p. 4, ¶ 12.

Costco publishes to its employees an Employee Agreement that sets forth policies and procedures applicable to hourly employees like Hillman. *Id*. at p. 4, ¶ 13. Hillman received a copy of the 2007 Employee Agreement when he was first hired as a seasonal employee in 2007. *Id*. at pp. 4-5, ¶ 14. Hillman also received, but refused to sign for, a copy of the 2010 Employee Agreement during a meeting with Costco management in May 2011. *Id*. at p. 5, ¶ 15. Costco's 2010 Employee Agreement prohibits discrimination and retaliation on the basis of an employee's protected characteristics, including disability. *Id*. at pp. 5-6, ¶¶ 16-17. The 2010 Employee Agreement offers all employees "personal medical leave," which allows for a one-year leave of absence for an employee's own personal health issue. *Id*. at p. 6, ¶ 18. Costco encourages its employees to discuss their questions and concerns under its "Open Door Policy," which is explained in the Employment Agreement. *Id*. at p. 6, ¶ 19.

Costco employs Regional Leave Administration Specialists who work with employees on approved leaves of absence. *Id*. at p. 6, ¶ 20. When an employee is ready to return from leave, the employee must contact a member of management, either an assistant general manager or a general manager, to schedule a job assessment review meeting. *Id*. at p. 7, ¶ 22. When work restrictions are received from the employee's physician, Costco holds a job assessment review

meeting to explore job accommodations, and Frances Parisi, a third-party ADA consultant, coordinates the meeting between the employee, the warehouse general manager, and the leave administration specialist. *Id*. at p. 7, ¶ 23 & p. 9, ¶ 31. Costco generally attempts to return an employee to the position that he last held at his warehouse, with the next option being an equivalent position, and with the option after that being an open position within his job classification. *Id*. at pp. 7-8, ¶ 24. Employees on leave generally are given priority to apply for open positions, provided that the employee can perform the essential functions of the job with or without a reasonable accommodation. *Id*. at p. 8, ¶ 26. Positions at a higher job classification are considered promotional opportunities and are not evaluated as part of the job accommodation process. *Id*. at p. 8, ¶ 25.

In February 2010, Hillman was injured during a snowstorm while pushing carts in the Costco parking lot. *Id*. at p. 2, ¶ 4. Hillman filed a workers' compensation claim against Costco. *Ibid*. Following his injury, Hillman was moved to the major sales department at the Lincoln Park facility, where, at Thomas's direction and as an accommodation for the injury, he was allowed to sit as needed. Doc. 66 at p. 29, ¶ 1. Hillman now suffers from polyneuropathy, nerve damage, and labrum tears, and he considers himself to have a permanent disability as a result of his polyneuropathy. Doc. 61 at p. 2, ¶ 6. Due to his injuries, Hillman cannot be exposed to extreme temperatures and needs to sit after ten or fifteen minutes of walking due to swelling or pain in his feet. *Id*. at p. 3, ¶ 7.

On March 28, 2010, about a month after the February 2010 injury, Hillman began an approved medical leave of absence. *Id*. at p. 9, ¶ 28. Mark Cawsey, a Regional Leave Specialist, was assigned to assist with Hillman's return to work, and Hillman was advised to directly contact Thomas when he was ready to return from his leave. *Id*. at pp. 6-7, ¶¶ 21-22. In December

2010, Hillman spoke with Thomas, who explained the process for returning to work, which as noted above included a job assessment review meeting to discuss Hillman's restrictions. *Id*. at p. 9, ¶ 29. In February 2011, Hillman was released to work with the restriction that he "need[ed] to sit more than stand," and Costco scheduled a job assessment meeting for March 2011. *Id*. at p. 9, ¶ 30. If, following the job assessment meeting, Costco determined that a reasonable accommodation could be made for Hillman in an open position within his job classification, Costco would award the position to him. *Id*. at pp. 12-13, ¶ 43.

On March 3, 2011, Hillman participated in his first job assessment meeting via telephone. *Id*. at p. 9, ¶ 31. Cawsey and Parisi also were present via telephone, and Hale and Thomas were in the warehouse office. *Ibid*. Hillman acknowledged that his position prior to taking leave, front-end assistant, was "not within the [medical] restrictions" discussed at the meeting, and he testified at his deposition that "[w]e already knew that [the job responsibilities of a front end assistant] were not tasks that I would be able to perform based on the restrictions that I was given by the medical doctor, so we skipped those." *Id*. at p. 10, ¶ 33.

During the meeting, Thomas mistakenly stated that a pharmacy technician position was available, but Cawsey advised the group that the pharmacy technician position was at a job grade higher than Hillman's level and thus could not be considered for purposes of the job assessment meeting. *Id*. at pp. 13-14, ¶ 46. If Hillman had been interested in the pharmacy technician position, he could have applied, but to qualify, he needed a state-certified license, had to have already been working at the time, and had to submit a letter of interest and participate in an interview process. *Id*. at p. 14, ¶ 47. Hillman believes that he should have been able to bid for the pharmacy technician position, but he did not apply or later complain to anyone at Costco that he was not being allowed to post for that position. *Id*. at p. 14, ¶ 48. There were no other

positions available at the Lincoln Park warehouse in March 2011. *Id*. at p. 10, ¶ 34 & p. 13, ¶ 45. Following the March 2011 job assessment meeting, Costco sent Hillman a summary of the meeting that was later revised to reflect that the pharmacy technician position had been identified but not discussed because it was a promotional opportunity and thus not under consideration for the job assessment process. *Id*. at p. 14, ¶ 49.

Costco allowed Hillman to remain on a leave of absence as a reasonable accommodation and began sending him job descriptions for positions in his classification that became available at the Lincoln Park warehouse, which was the only Costco location of interest to him. *Id*. at p. 10, ¶ 35. Hale and Burghgraef were involved in sending Hillman notifications of the open positions. *Id*. at p. 11, ¶ 36. Hale would check the job bank of available positions at the Lincoln Park warehouse, identify positions at Hillman's classification, and then send Hillman both the job posting and a job analysis that described the job functions. *Id*. at p. 11, ¶ 38. If Hillman were interested in a particular position, he was responsible for contacting the warehouse to advise Costco within three days of receiving the job posting. *Ibid*.; *id*. at p. 12, ¶ 41. Hillman then would have been prioritized over other applicants for such position because Costco wanted employees on leave to return to work. *Id*. at p. 17, ¶ 61.

It was Costco's policy and Hale's practice to send job postings to employees via both UPS (for delivery signature) and regular or certified mail. *Id*. at p. 11, ¶ 37. At some point after the March 2011 job assessment meeting, the Lincoln Park warehouse became aware that Hillman could not receive UPS or certified mail and therefore began sending job postings to him via only regular mail. *Id*. at p. 12, ¶ 39. Hillman acknowledged that if documents were sent to him via regular mail, they would be left for him at his apartment. *Id*. at p. 12, ¶ 40. Hillman thereafter received, via regular mail, job postings from the Lincoln Park warehouse. *Ibid*. The postings

sent to Hillman were logged on a "job posting log," and the dates on the log reflect the dates that the postings were sent to Hillman. *Id.* at p. 11, ¶ 37.

On May 3, 2011, Costco conducted a second job assessment meeting with Hillman. *Id.* at p. 14, ¶ 50. The attendees included Hillman, Burghgraef, and Thomas at the warehouse office, along with Parisi and Cawsey via telephone. *Id.* at p. 15, ¶ 51. Although there were positions available within Hillman's classification, those positions were not discussed because of Hillman's medical restrictions—he needed a more sedentary or seated position, and could not be exposed to extreme temperatures—which were "significant enough that Costco did not have positions that were available or that [he] could perform." *Id.* at p. 15, ¶ 53. One of the open positions within Hillman's classification was for gas station attendant, which would have allowed him to sit for a considerable time during his working shift. Doc. 66 at p. 35, ¶ 13.[*]

After the May 2011 job assessment meeting, Burghgraef asked Hillman to "sign documents for a leave of absence" and gave him a copy of Costco's 2010 Employee Agreement. Doc. 61 at p. 15, ¶ 54. Hillman had told Burghgraef and Thomas at the meeting that he would refuse to sign for the 2010 Employee Agreement "without his lawyer okaying it" and that "it might be for the EEOC [Equal Employment Opportunity Commission]," to which Thomas responded: "[Hillman] doesn't have to sign it. Just give him the book and everything." *Id.* at pp. 15-16, ¶ 55. Hillman's comment that "it might be for the EEOC" was the one and only comment he made about the EEOC to Thomas or Burghgraef. *Id.* at p. 15, ¶ 56. Thomas recalls that

---

[*] Costco's response to Plaintiffs' Local Rule 56.1(b)(3)(C) statement asserts that the gas station attendant position was "rejected by Hillman because it was an outside position," Doc. 66 at p. 35, ¶ 13, but the exhibit cited by Costco, a written summary of the May 2011 meeting, Doc. 54-23, does not support that assertion. In any event, Costco does not even attempt to establish the admissibility of the exhibit under Federal Rule of Evidence 803(6) or any other exception to the hearsay rule. *See Galvan v. Cmty. Unit Sch. Dist. #300*, __ F. Supp. 2d __, 2014 WL 2514721, at *3 n.* (N.D. Ill. June 4, 2014) (citing cases); *NRRM, LLC v. Mepco Fin. Corp.*, 2013 WL 4537391, at *4-5 (N.D. Ill. Aug. 27, 2013) (citing cases); *Komal v. Arthur J. Gallagher & Co.*, 833 F. Supp. 2d 855, 859-60 (N.D. Ill. 2011) (citing cases).

Hillman refused to sign the job assessment notes "on the advice of his legal counsel," and neither Thomas nor Burghgraef has any recollection of Hillman mentioning the EEOC. *Id.* at p. 16, ¶ 57. Still, Costco continued to send Hillman job postings in his classification after the May 2011 meeting. *Id.* at p. 16, ¶ 58.

On or shortly after June 21, 2011, Hillman received notice that the Lincoln Park facility had an opening for a "major sales assistant," the same position that Hillman temporarily held following his February 2010 injury. Doc. 66 at p. 30, ¶ 2. Employees in the major sales assistance position generally are "on their feet all day" and are responsible for answering questions about electronic items, helping members lift heavy items into their carts, and stocking merchandise, but when Hillman held the position after his injury, he was allowed to sit as needed. Doc. 61 at pp. 7-9, ¶¶ 24, 26-27. On July 1, 2011, Hillman personally appeared at the Lincoln Park warehouse to speak with Thomas about the position. Doc. 66 at p. 31, ¶ 4. Hillman spoke with Williams, one of the Assistant Warehouse Managers, and asked to speak with Thomas; Williams advised that Thomas was unavailable; and Thomas asked Williams to tell Thomas to contact him. Doc. 61 at p. 16, at ¶ 59; Doc. 66 at p. 31, ¶ 5. Williams and DiGuardi, one of the other Assistant Warehouse Managers, recall that Hillman came to the warehouse but state that neither had conversations with him about his interest in returning to work. Doc. 61 at p. 17, ¶ 60. Hillman made numerous attempts to contact Thomas regarding the major sales assistant position, but Thomas did not respond to Hillman's in-store visits and telephone messages. *Id.* at p. 12, ¶ 42.

Hillman eventually learned of "limited part-time" positions available to some Costco employees. Doc. 66 at p. 32, ¶ 6. It was Thomas's practice to utilize the limited part-time positions very sparingly, primarily because individuals holding those jobs, unlike regular part-

time employees, do not receive health insurance. Doc. 61 at p. 20, ¶ 73. Hillman understood that limited part-time employees did not receive health insurance, but he stated that such a position would "get [him] back to working." Doc. 66 at p. 32, ¶ 7. After learning of the "limited part-time" designation, Hillman attempted to contact Thomas and Costco management regarding such a position, but he never received a response. Doc. 61 at p. 19, ¶ 70; Doc. 66 pp. 32-33, ¶¶ 6, 8.

Hillman believes he should have received a limited part-time position with Costco, but he does not know whether Costco warehouses are required to have such a position on staff. Doc. 61 at p. 19, ¶ 69. During the relevant time period, there were eleven individuals employed on a limited part time basis at the Lincoln Park warehouse. *Id*. at p. 19, ¶ 71. Six were contract pharmacists, and the others performed their regular jobs and duties but had made requests for limited part-time positions, to which Thomas had agreed as required by the Employee Agreement. *Ibid*. Costco had no other openings or needs for limited part-time employees at the Lincoln Park warehouse during 2011. *Id*. at p. 19, ¶ 72.

Hillman testified that he made numerous calls to the Lincoln Park facility attempting to contact Thomas, including after receiving a letter on July 12, 2011, about an open stocker center associate position, but that Hillman never received a response from Thomas or anybody else in Costco management. Doc. 66 at pp. 33-34, ¶¶ 10-11. In addition, Hillman personally appeared at the warehouse on two separate occasions, but Thomas was unavailable during those visits and consistently failed to respond to Hillman's messages. *Id*. at p. 33, ¶ 10. Hillman does not know whether Thomas ever received the messages that Hillman claims he left about open positions, and there is no evidence that Thomas received the messages or was deliberately not returning his phone calls. Doc. 61 at p. 17, ¶ 62. Although there were many ways for an employee to get a

message to Thomas, none of Costco's managers or payroll clerks ever received a message from Hillman regarding his interest in returning to work. *Id*. at p. 17, ¶ 63.

Because Hillman was advised to contact Thomas if he were interested in a position, Hillman did not attempt to contact anyone else (such as Thomas's manager or the regional office) about any open positions; in addition, Hillman never utilized Costco's Open Door Policy to report that Thomas was not returning his phone calls, and he never made a complaint of discrimination or retaliation to Costco. *Id*. at pp. 17-18, ¶¶ 63-64; Doc. 66 at p. 30, ¶ 3. However, when Hillman realized that he was consistently not getting responses to his phone messages or in-person attempts to contact Thomas, he asked Adam Rettberg, his attorney on the workers' compensation matter, to contact Costco's counsel, advise counsel of Hillman's desire to return to work, and ask counsel to arrange for Thomas to contact Hillman. Doc. 66 at p. 33, ¶ 9.

By July 22, 2011, Costco had decided to terminate Hillman's employment. Doc. 61 at pp. 18-19, ¶ 68. On July 22, 2011, Thomas advised Hillman in writing that Costco had not received communications from him indicating that he wanted to return to work and would proceed with terminating his employment. *Id*. at p. 18, ¶ 65. Hillman testified that he never received the July 22 letter and thus did not contact anyone at the Lincoln Park warehouse to discuss it. *Ibid*. Hillman received a formal termination letter on September 21, 2011. Doc. 66 at p. 34, ¶ 11. Hillman is not aware of the factors that Thomas took into consideration when making the decision to terminate him. Doc. 61 at p. 18, ¶ 67.

Hillman does not know whether other employees with restrictions or disabilities were accommodated at the Lincoln Park warehouse, but he is aware that Costco accommodated a pregnant employee's restrictions. *Id*. at p. 20, ¶ 74. During Thomas's tenure as Warehouse

General Manager, Costco attempted to accommodate at least two other employees with permanent restrictions, one successfully. *Id*. at p. 20, ¶ 75.

On October 5, 2011, Hillman filed an EEOC charge alleging discrimination on the basis of his disability in violation of the ADA. *Id*. at p. 3, ¶ 9. Hillman's charge and questionnaire do not allege that Costco "retaliated" against Hillman. *Id*. at p. 4, ¶ 10. Hillman checked only the "disability" box on the EEOC charge, and the narrative portion of the charge says nothing about retaliation. Doc. 54-10.

## Discussion

### I.      Disparate Treatment Claim

Hillman's disparate treatment claim alleges that Costco treated Hillman less favorably than other individuals due to his disability. Doc. 41 at ¶¶ 31-38. "Disparate treatment claims arise from language in the ADA prohibiting covered entities from 'limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee.'" *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001) (quoting 42 U.S.C. § 12112(b)(1)). "As in other disparate treatment employment discrimination claims, a plaintiff may prove discrimination in violation of the ADA using one of two methods. Under the so-called 'direct' method, the plaintiff may show either direct or circumstantial evidence that points to a conclusion that the employer acted as it did for illegal reasons. The alternative way to prove discrimination is the familiar burden-shifting *McDonnell Douglas* method." *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1126 (7th Cir. 2006) (citations omitted). Because Hillman does not identify which method he is pursuing, the court will consider both. *See Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013).

Hillman cannot meet his burden under the direct method. "Under the 'direct method,' the plaintiff may avoid summary judgment by presenting sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus motivated an adverse employment action." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). The appropriate focus under the direct method "is not whether the evidence offered is direct or circumstantial but rather whether the evidence points directly to a discriminatory reason for the employer's action." *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) (internal quotation marks omitted); *see also Morgan*, 724 F.3d at 997 ("The plaintiff's task in opposing a motion for summary judgment is straightforward: he must produce enough evidence, whether direct or circumstantial, to permit the trier of fact to find that his employer took an adverse action against him because of his race."); *Everett v. Cook Cnty.*, 655 F.3d 723, 729 (7th Cir. 2011); *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 672 (7th Cir. 2011). "Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption. In short, direct evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (citations and internal quotation marks omitted); *see also Morgan*, 724 F.3d at 995; *Coleman*, 667 F.3d at 860; *Everett*, 655 F.3d at 729. Not surprisingly, the parties' Local Rule 56.1 statements and responses contain no facts that could constitute direct evidence of discrimination.

"A plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker. That circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Rhodes*, 359 F.3d at 504 (citations and

internal quotation marks omitted); *see also Chaib v. Indiana*, 744 F.3d 974, 982 (7th Cir. 2014); *Perez v. Thorntons, Inc.*, 731 F.3d 699, 710 (7th Cir. 2013); *Morgan*, 724 F.3d at 995-96; *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1105 (7th Cir. 2012); *Everett*, 655 F.3d at 729 (explaining that circumstantial evidence is "evidence that points to discriminatory animus through a longer chain of inferences").  Circumstantial evidence typically falls into one of three categories: "(1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action." *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011); *see also Chaib*, 744 F.3d at 982; *Perez*, 731 F.3d at 711; *Morgan*, 724 F.3d at 995-96; *Coleman*, 667 F.3d at 860; *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011).  To overcome summary judgment, circumstantial evidence need not "combine to form a tidy, coherent picture of discrimination, in the same way the tiles of a mosaic come together to form a tidy, coherent image, in order for a plaintiff to survive summary judgment." *Morgan*, 724 F.3d at 997.  Rather, "[i]f the plaintiff can assemble from various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate, and the plaintiff may prevail at trial even without producing any 'direct' proof." *Id.* at 996.

Hillman adduces no evidence of suspicious timing, ambiguous statements, or improper behavior toward other disabled employees.  All that Hillman offers by way of circumstantial evidence is that Thomas never responded to Hillman's messages regarding the major sales assistant position or the possibility of working in a limited part-time capacity.  Doc. 60 at 7-8.

However, it is undisputed that there is no evidence that Thomas ever received Hillman's messages or deliberately ignored Hillman. Doc. 61 at pp. 17-18, ¶¶ 62-64. At most, there were miscommunications between Hillman and Thomas, and even if Thomas and/or his colleagues somehow dropped the ball on taking Hillman's messages (Thomas's colleagues) and getting back to Hillman (Thomas), mere mistakes and poor management do not, by themselves, show discriminatory intent. *See Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 778 (7th Cir. 2013) ("A mere mistake by an employer does not constitute pretext; instead, pretext is a phony excuse …. [T]he court will not reexamine business decisions as a super-personnel department; instead, the important consideration is whether the employer gave an honest explanation of its behavior.") (internal quotation marks omitted); *Reeder-Baker v. Lincoln Nat'l Corp.*, 834 F.2d 1373, 1381 (7th Cir. 1987) ("If you honestly explain the reasons behind your decision, but the decision was ill-informed or ill-considered, your explanation is not a pretext ….") (internal quotation marks omitted). And while Hillman's brief asserts that he "was treated less favorably than other employees," Doc. 60 at 14, the court explains below how he fails to offer evidence that any of these other employees were similarly situated to him and outside the protected class. In short, the evidence adduced by Hillman falls far short of the circumstantial evidence needed to allow a jury to infer intentional discrimination. *See Johnson v. Holder*, 700 F.3d 979, 981 (7th Cir. 2012) (holding that the plaintiff did not satisfy the direct method where she "failed to provide sufficient evidence of a similarly situated employee"); *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 677 (7th Cir. 2012) (affirming summary judgment on a disparate treatment claim where "[the] record simply does not contain a hint of race-based animus" and "[a] jury could not reasonably conclude that Good was treated differently because of her [protected status] without relying on speculation").

Hillman's claim also fails under the indirect method articulated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-05 (1973). The indirect method has three steps. The plaintiff first must make a prima facie case of discrimination, which requires him to establish that (1) he is disabled within the meaning of the ADA; (2) he was meeting the legitimate employment expectations of his employer; (3) he suffered an adverse employment action; and (4) that similarly situated employees not in the protected class received more favorable treatment. *See Amadio v. Ford Motor Co.*, 238 F.3d 919, 924 (7th Cir. 2001); *Weigel v. Target Stores*, 122 F.3d 461, 465 (7th Cir. 1997); *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 797 (7th Cir. 1995). If the plaintiff makes a prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802; *see Maarouf v. Walker Mfg. Co.*, 210 F.3d 750, 752 (7th Cir. 2000). If the defendant articulates such a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff, who must provide evidence that the defendant's stated reason is pretextual. *See McDonnell Douglas*, 411 U.S. at 804-05; *Hoffman*, 256 F.3d at 578. "Pretext is more than just faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phony reason for some action." *Silverman*, 637 F.3d at 743-44 (brackets and internal quotation marks omitted).

Costco correctly argues that Hillman cannot satisfy the fourth element of his prima facie case, *i.e.*, that similarly situated employees not in the protected class received more favorable treatment. Doc. 65 at 2. "In order for an individual to be similarly situated to the plaintiff, the plaintiff must show that the individual is directly comparable to her in all material respects. Factors relevant to this inquiry include whether the employees reported to the same supervisor, whether they were subject to the same standards and whether they had comparable education, experience and qualifications." *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir.

2006) (internal quotation marks and citations omitted); *see also Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 504 (7th Cir. 2014) (same). "Although the similarly situated inquiry is not a mechanical comparison, it requires enough common factors to determine if intentional discrimination was at play. In other words, the purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable: complaints about discrimination." *Cung Hnin*, 751 F.3d at 504-05 (citation and internal quotation marks omitted); *see also Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 981 (7th Cir. 2014) (same); *Filar v. Bd. of Educ. of City of Chi.*, 526 F.3d 1054, 1061 (7th Cir. 2008) (same). On summary judgment, "[i]t [is] up to [the plaintiff] to find others who were directly comparable in all material respects." *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006) (internal quotation marks omitted).

Hillman has failed to show that any similarly situated employee outside the protected class received better treatment than he. In arguing that he was treated less favorably than other employees, Hillman's brief mentions only Debra Ippolito, who according to Hillman was given the gas station attendant position. Doc. 60 at 14; Doc. 66 at pp. 35-36, ¶ 14. But there is nothing in Hillman's brief or in his (or Costco's) Local Rule 56.1 statements or responses that addresses, let alone shows, that Ippolito was indeed similarly situated to him. (In fact, it is undisputed that Ippolito was offered a gas station position "as an accommodation," which suggests that she may also have been disabled within the meaning of the ADA and thus within the protected class. Doc. 66 at pp. 35-36, ¶ 14.) Hillman likewise fails to assert facts showing that the other employees mentioned in his briefs or the parties' Local Rule 56.1 statements and responses, Doc. 60 at 6, Doc. 61 at pp. 19-20, ¶¶ 71, 74-75, were similarly situated to him and outside the

protected class. Because Hillman has failed to adduce sufficient evidence on similarly situated element, he cannot forestall summary judgment under the indirect method. *See Diaz*, 653 F.3d at 590 ("Absent a valid comparator, Robles cannot move past summary judgment under the indirect method of proof."); *McGowan v. Deere & Co.*, 581 F.3d 575, 580 (7th Cir. 2009) ("Because [the plaintiff] is unable to demonstrate that a similarly situated person not in the protected class was treated more favorably than he was, he cannot make out a *prima facie* case of racial discrimination.").

Even if Hillman could satisfy his prima facie case, Costco has established a legitimate, nondiscriminatory, and non-pretextual reason for terminating Hillman: Thomas honestly believed that Hillman had not expressed interest in any open position within his medical restrictions. Doc. 52 at 15. Although Hillman maintains that he made repeated attempts to contact Thomas regarding open positions, Doc. 60 at 7, and although the court must take that fact as true at this stage, the summary judgment record includes no evidence that Thomas ever received the messages from Hillman and was deliberately not responding, or that the other managers or payroll clerks ever received a message from Hillman regarding his interest in returning to work. Doc. 61 at pp. 17-18, ¶¶ 62-64. Accordingly, even if Thomas was mistaken in believing that Hillman had not expressed interest in any open position, Costco's explanation was not pretextual and its treatment of Hillman therefore was not discriminatory. As noted above: "Neither in ordinary language nor in the law does [pretext] mean a mistake. It means a lie, specifically a phony reason from some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995); *see also Bruno v. City of Crown Point, Ind.*, 950 F.2d 355, 364 (7th Cir. 1991) ("An employer's decision does not have to be wise, prudent, or logical; it merely has to be explained clearly and applied indiscriminately."); *Pollard v. Rea Magnet Wire Co., Inc.*, 824

F.2d 557, 560 (7th Cir. 1987) ("No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, Title VII and § 1981 do not interfere.").  For this reason as well, Hillman cannot satisfy the indirect method.

## II.     Failure to Accommodate Claim

Hillman's failure to accommodate claim alleges that Costco refused to make reasonable accommodations for his disability by excluding open positions that matched his skills and accommodated his disabilities.  Doc. 41 at ¶¶ 41-51.  "The ADA requires employers to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer].'"  *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)(A)).  To succeed on a failure-to-accommodate claim, "(1) the plaintiff must be a qualified individual with a disability; (2) the employer must be aware of the plaintiff's disability; and (3) the employer must have failed to reasonably accommodate the disability."  *Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013).  "To survive a motion for summary judgment [on a failure to accommodate claim], a plaintiff must present the court with evidence that, if believed by a trier of fact, would establish all three elements." *Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 748 (7th Cir. 2011).

Costco contests only the third element, arguing that because Hillman could not walk for more than fifteen minutes per hour and needed to "sit more than stand," he could not perform the essential functions of his job or any of other available jobs with or without a reasonable accommodation.  Doc. 52 at 9-11; Doc. 65 at 4-7.  Hillman responds that he was qualified for two open positions: (1) the part-time gas station attendant position; and (2) the major sales

assistant position.  Doc. 60 at 8-9.  There is no need here to address the gas station position, as the summary judgment record, viewed with all material disputes resolved in Hillman's favor, shows that he was qualified for the major sales assistant position.

Costco argues that because employees in the major sales assistant position are "on their feet all day" and are responsible for stocking merchandise and helping members lift heavy items into their carts, Hillman could not have performed the essential functions of the position.  Doc. 65 at 5.  But because Costco previously accommodated Hillman in that position, albeit for a short period of time immediately following his February 2010 injury, a reasonable jury could find that Hillman was capable of performing the essential functions of the job with the reasonable accommodation of being allowed to sit as needed and/or to work part-time.  *See* 42 U.S.C. § 12111(9)(B) (providing that reasonable accommodation may include "job restructuring, part-time or modified work schedules, [or] reassignment to a vacant position"); *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996) (holding that a jury had to resolve "whether [the plaintiff] could have performed the essential functions of the job had [the defendant school] accommodated him," given that another school had previously accommodated the plaintiff with "a simple adjustment in his duties"); *Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996) (reversing summary judgment on the ground that a jury had to resolve whether the defendant employer could have reasonably accommodated the plaintiff engineer, where the engineer proposed adjusting milestone deadlines to accommodate his disability and presented evidence that the employer "often adjusted milestone deadlines [in the past] according to the ongoing needs of other employees").  Accordingly, summary judgment is inappropriate on the failure to accommodate claim.

### III. Retaliation Claim

Finally, Hillman alleges that Costco terminated him in retaliation for suggesting after the May 2011 job assessment meeting that he might complain to the EEOC. Doc. 41 at ¶¶ 52-60. The ADA's retaliation provision states in relevant part: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a); *see Cloe*, 712 F.3d at 1180. Costco seeks summary judgment on Hillman's retaliation claim, arguing that Hillman failed to bring the claim to the EEOC and also that the claim fails on the merits. Because Costco is correct on the first ground, there is no need to reach the merits.

A plaintiff in Illinois who wants to bring in federal court a claim under Title I of the ADA must first file a charge with the EEOC within 300 days of the alleged violation. *See* 42 U.S.C. § 12117 (ADA provision adopting the procedures set forth in Title VII, 42 U.S.C. § 2000e-5); *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 636 (7th Cir. 2004) ("an employee may sue under the ... ADA only if he files a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice"). The plaintiff must present in the charge any claim he later wants to pursue in federal court. *See McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996) ("[g]enerally, a Title VII plaintiff may bring only those claims that were included in her EEOC charge"). This rule "serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employe[r] some warning of the conduct about which the employee is aggrieved .... For allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d

497, 500 (7th Cir. 1994) (citation omitted); *see also Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999) (same in the context of an ADA claim).

It is undisputed that Hillman did not allege retaliation in his EEOC charge. He checked only the "disability" box on the charge, and in the narrative portion of the charge he focused exclusively on disability discrimination and failure to accommodate, and he did not mention protected activity or retaliation or even remotely suggest that anybody at Costco retaliated against him for engaging in protected activity. Doc. 61 at p. 4, ¶ 10; Doc. 54-10. (To the extent it matters, the same is true of Hillman's EEOC intake questionnaire. Doc. 61 at p. 4, ¶ 10; Doc. 54-11.) Hillman argues, however, that because the retaliation claim is "like or reasonably related" to the discrimination and accommodation allegations in the charge and "grow[s] out of such allegations," *Cheek*, 31 F.3d at 500 (internal quotation marks omitted), the claim is properly before the court, Doc. 60 at 11-12.

Cheek's argument fails to persuade. Settled precedent holds that allegations of discrimination and failure to accommodate in an EEOC charge are not like or reasonably related to allegations of retaliation and therefore are not sufficient to support a retaliation claim. *See Reynolds v. Tangherlini*, 737 F.3d 1093, 1100 (7th Cir. 2013) (holding that the plaintiff failed to exhaust his retaliation claim where his EEOC charge alleged only discrimination); *Swearingen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864-65 (7th Cir. 2010) ("Normally, retaliation and discrimination charges are not considered like or reasonably related to one another.") (internal quotation marks omitted); *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 716 (7th Cir. 2006) (same as *Reynolds*), *overruled on other grounds as noted in EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007); *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726-27 (7th Cir. 2003) ("Normally, retaliation, sex discrimination, and sexual harassment charges are

not 'like or reasonably related' to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another."); *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002) ("We do not believe that Mr. Peters' retaliation claim is like or reasonably related to this discrimination charge. Critical to a prima facie case of retaliation is that the plaintiff engaged in protected activity, such as the filing of a charge of discrimination or other complaint of discriminatory activity. However, the charge makes no mention of a complaint of discrimination, to whom the complaint was made or what adverse action allegedly resulted from the complaint. Furthermore, although given the option to check the box on the charge form indicating retaliation, Mr. Peters did not do so. Keeping in mind that one of the purposes of the charge is to alert the employer to the offending behavior, we believe that Mr. Peters' failure to mention any type of protected activity and his failure to identify retaliation as a basis for his charge preclude him from relying on the original charge of discrimination as a basis for his retaliation claim.") (internal citation omitted); *Ulatowski v. John Sterling Corp.*, 2005 WL 88971, at *7 (N.D. Ill. Jan. 10, 2005) (holding that ADA harassment and retaliation claims "exceed the scope of [the plaintiff's] EEOC charge, which alleged only failure to accommodate and wrongful discharge").

It is true that the Seventh Circuit has carved an exception to the foregoing principles for some retaliation claims, holding that "a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first [EEOC] charge." *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989); *see also Horton v. Jackson Cnty. Bd. of Cnty. Comm'rs*, 343 F.3d 897, 898 (7th Cir. 2003) ("[R]etaliation for complaining to the EEOC need not be charged separately from the discrimination that gave rise to the complaint, at least … if the person discriminated against and the person retaliated against are the same.") (citations omitted);

*Gawley v. Ind. Univ.*, 276 F.3d 301, 314 n.8 (7th Cir. 2001) ("Of course, an employee is not required to file a separate EEOC charge alleging retaliation when the retaliation occurs in response to the filing of the original EEOC charge."); *Heuer v. Weil-McLain*, 203 F.3d 1021, 1023 (7th Cir. 2000) (same); *McKenzie*, 92 F.3d at 482 (holding that a plaintiff may bring suit on a retaliation claim not included in his administrative charge "where the alleged retaliation arose after the charge of discrimination had been filed") (quoting *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 545 (7th Cir. 1988)); *Malhotra*, 885 F.2d at 1312 ("[W]e join the other circuits that have spoken to the question in adopting the rule that a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge."). The rationale for this exception is that requiring a plaintiff to bring a second EEOC charge alleging retaliation for filing an EEOC charge "would mean that two charges would have to be filed in a retaliation case—a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII." *McKenzie*, 92 F.3d at 482 (internal quotation marks omitted).

Consistent with this rationale, the Seventh Circuit held that this exception does *not* apply to claims based on alleged retaliatory acts committed *before* the plaintiff's filing of an EEOC charge, since such retaliation could be alleged in the initial charge and therefore would not require a "needless" second charge. *Id.* at 482-83. As the Seventh Circuit explained:

> In this case, Ms. McKenzie alleges several retaliatory acts, and two of those acts occurred prior to her filing of her original EEOC charge. Yet Ms. McKenzie did not mention her claims of retaliation in either her original charge against IDOT or her amended charge filed several months later. Because each of those incidents of retaliation could have been—and should have been—included in her administrative charges, they cannot now serve as the basis of the retaliation claim alleged in her complaint.

*Id.* at 483. Here, Hillman did not file his EEOC charge until October 5, 2011, approximately two weeks after his allegedly retaliatory termination, so the exception to the ordinary exhaustion rule does not apply.

Hillman's retaliation claim accordingly is dismissed. The dismissal is without prejudice. The Seventh Circuit has explained that "the proper remedy for a failure to exhaust administrative remedies is to dismiss the suit without prejudice, thereby leaving the plaintiff free to refile his suit when and if he exhausts all of his administrative remedies or drops the unexhausted claims." *Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989); *see also Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004); *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Donnelly v. Yellow Freight Sys., Inc.*, 874 F.2d 402, 410 n.11 (7th Cir. 1989). This principle applies to dismissals for failure to bring an employment discrimination claim in an EEOC charge; such dismissals are without prejudice to the plaintiff pursuing his claim in federal court upon properly exhausting the unexhausted claims, subject of course to any applicable defenses, such as the failure to comply with the statute of limitations. *See Teal v. Potter*, 559 F.3d 687, 693 (7th Cir. 2009); *Hill v. Potter*, 352 F.3d 1142, 1145-46 (7th Cir. 2003).

## Conclusion

For the foregoing reasons, Costco's motion for summary judgment is granted with respect to the disparate treatment and retaliation claims and denied with respect to the failure to accommodate claim. The disparate treatment claim is dismissed with prejudice, while the retaliation claim is dismissed without prejudice. The case will proceed to trial on the failure to accommodate claim.

July 14, 2014

_____
United States District Judge